

# KEN PAXTON
ATTORNEY GENERAL OF TEXAS

September 28, 2015

The Texas Constitution and sections 402.042 and 402.043 of the Government Code grant the attorney general authority to issue attorney general opinions. An attorney general opinion is a written interpretation of existing law. The development of an attorney general opinion is an involved and thorough process involving many layers of comprehensive review. Attorney general opinions do not necessarily reflect the attorney general's personal views, nor does the attorney general in any way "rule" on what the law should say. As have those that have come before it, this administration strives to craft opinions with the greatest level of legal accuracy and without any hint of impropriety.

By its very nature, the attorney general opinion process invites a variety of legal issues to be brought before our office for analysis and review. The questions asked are outside the scope of this office's control, and some of the questions to be addressed may raise actual or perceived conflicts of interest for the Attorney General and his staff. Consistent with applicable statutes and rules, staff members involved in the opinion process must recuse themselves from matters in which there may exist an actual or perceived conflict of interest. Accordingly, pursuant to section 402.001 of the Government Code, I delegate my signature authority in the attorney general opinion process to the First Assistant Attorney General, Charles E. Roy, for those opinions in which I may have an actual or perceived conflict of interest or in which my involvement gives even the appearance of impropriety. Any such opinion signed by the First Assistant under this delegation carries the full force of an attorney general opinion.

Very truly yours,

KEN PAXTON
Attorney General of Texas



October 19, 2015

The Honorable Jim Murphy
Chair, Committee on Corrections
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Dear Representative Murphy:

In the process of reviewing this matter, this office concludes there could be an actual or perceived conflict of interest such that the Attorney General has recused himself from any participation on the matter. Accordingly, pursuant to Government Code section 402.001 and the authority delegation issued by the Attorney General on September 28, 2015, the First Assistant Attorney General will sign this opinion. Any such recusal is intended to go beyond the letter and spirit of the governing law and rules in order to avoid even the appearance of impropriety and to demonstrate our ongoing commitment to the highest ethical standards.

Very Truly Yours,

Charles E. Roy
First Assistant Attorney General

CER:mma



October 19, 2015

The Honorable Jim Murphy
Chair, Committee on Corrections
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Opinion No. KP-0040

Re: Whether a community college system may expend funds for attorney's fees incurred by a member of its board of trustees in a challenge to the member's qualification to serve as trustee (RQ-0022-KP)

Dear Representative Murphy:

On behalf of the Houston Community College System (the "College"), you ask whether "an institute of higher education may expend public funds to reimburse or pay the personal attorney's fees incurred by a board member defending a quo warranto action or removal proceeding, challenging the board member's election as trustee."[1] You explain that in 2013, a candidate who prevailed in the November election for the District II seat was the subject of a quo warranto proceeding filed by the State of Texas challenging the candidate's eligibility to serve due to improper residency. See id. at 1–2. You state that "[n]otwithstanding a temporary restraining order issued by the County Attorney and the quo warranto petition, [the candidate] took the oath of office" in January 2014 and is currently serving as trustee for the College. Id. You inform us that the trustee prevailed in the quo warranto suit and has now requested reimbursement for his personal expenses related to the legal representation in the matter. See id.

You indicate that the College is generally aware of attorney general opinions that have determined it is inappropriate to reimburse officers of governing bodies for the successful defense of election contests. See id. at 1–2, 4; see also Tex. Att'y Gen. Op. Nos. GA-0104 (2003), DM-431 (1997), JM-685 (1987). You ask us to "confirm that the College is not precluded from considering [the Trustee's request] simply because it arises in the context of an election contest, which the College argues is a private suit involving only the trustee's personal interest in seeking office." Request Letter at 2. You state that the "College wants to [e]nsure that where the issue is brought to the board, if a majority of the disinterested trustees . . . make a good faith determination that reimbursement of the action is in the public interest, such reimbursement is not otherwise precluded as a matter of law because the action arose in the context of an election contest." Id. at 3. We consider whether a governmental body has discretion under the common law to reimburse an officer's personal legal expenses incurred to defend against a challenge to the officer's qualifications to hold office.

---

[1]See Letter from Honorable Jim Murphy, Chair, House Comm. on Corrs., to Honorable Ken Paxton, Tex. Att'y Gen. at 1 (Apr. 21, 2015), https://www.texasattorneygeneral.gov/opinion/requests-for-opinion-rqs ("Request Letter").

We begin with the fundamental principle that public funds cannot be spent to defend private interests. *See* TEX. CONST. art. III, § 52(a). Yet, because litigation involving an individual officer or employee is often designed to impact the governmental entity's work, the common law allows the expenditure of public funds to reimburse an officer's or employee's legal expenses in certain instances, such that the constitutional prohibition is not implicated where the governmental entity can make two findings. *See* Tex. Att'y Gen. Op. Nos. GA-0104 (2003) at 3 (noting that "suits may be only nominally against individuals when they are really designed to obstruct or control the legitimate performance of official duties"), JC-0047 (1999) at 3 (enumerating test). First, the governmental entity "must determine that the suit involved a public interest requiring a vigorous defense, or, conversely that paying the legal fees serves a public, not merely the officer's or employee's private, interest." Tex. Att'y Gen. Op. No. JC-0047 (1999) at 3; *see also* Tex. Att'y Gen. Op. No. DM-488 (1998) at 2. Second, the entity "must determine that the officer or employee committed the alleged act or omission that was the basis of the lawsuit while acting in good faith and within the scope of official duties." Tex. Att'y Gen. Op. No. JC-0047 (1999) at 3; *see also* Tex. Att'y Gen. Op. No. GA-0104 (2003) at 4.

With respect to the first required finding, Attorney General Opinions GA-0104, DM-431, and JM-685 each determined that the interest involved in an election contest was only that of the candidate and not of the governmental entity. In Opinion JM-685, this office considered a school board's "defense of the individual candidate out of concern that it might lack a quorum to do business." Tex. Att'y Gen. Op. No. JM-685 (1987) at 2. The board additionally claimed that the contested election was close and that the school district had a legitimate interest in the accuracy of the vote count. *Id.* at 4. This office determined that both justifications were insufficient considering that the election contest was the "last step of the process by which an individual establishes that he has been elected trustee." *Id.* at 4. The opinion stated that "[i]t is difficult to justify on any grounds a school district's financial support of one contender in an election contest" and concluded that "no school district interest is served by paying for the individual trustee's defense in the election contest at issue." *Id.* at 4–5.

In Opinion DM-431, a sheriff sought reimbursement of his legal costs in an election contest. Tex. Att'y Gen. Op. No. DM-431 (1997) at 1. He suggested that the public interest was that he "as an incumbent who had been 'reelected' by the voters in a runoff, was 'obliged' to defend his position." *Id.* at 2. The opinion noted that the "sheriff was no more legally obliged to defend the election contest than he was to run for election or reelection, and the election contest did not involve interests of a sheriff as a county official but rather as a candidate for office." *Id.* The sheriff had also suggested that this successful defense saved the county the expense of holding a new runoff election. *Id.* at 3. This office responded that "[i]n any election contest, it is in the interest of the authority holding the election that justice be served, not that one candidate prevail over another" and that holding a new election, if required, would have served the electorate's interest. *Id.*

In Opinion GA-0104, this office reiterated the principle that a school district "has no legitimate interest in spending public funds to pay a school board member's legal expenses in an election contest, because the lawsuit involves only the trustee's personal interest in seeking office." Tex. Att'y Gen. Op. No. GA-0104 (2003) at 4. The authority to cover such expenses is limited to "situations where the district's interests . . . require assertion or defense in court." *Id.*

Unlike these three previous opinions, however, your inquiry involves not an election contest brought under the Election Code but a quo warranto proceeding brought under chapter 66 of the Civil Practice and Remedies Code. One purpose of a quo warranto action is to determine whether a "person usurps, intrudes into, or unlawfully holds . . . an office." TEX. CIV. PRAC. & REM. CODE ANN. § 66.001(1) (West 2008). In testing a candidate's authority to hold an office, a quo warranto action is similar to an election contest in that it determines the proper person entitled to a public office. An individual's interest in his or her own eligibility to hold office is exclusive to the individual. A governmental entity does not have a legitimate interest in any particular person holding office.[2]

Moreover, with respect to the second required finding, the acts and omissions involved in a quo warranto proceeding that tests a candidate's eligibility to hold office are likely outside the scope of the office's official duties. *See* Tex. Att'y Gen. Op. No. JC-0047 (1999) at 3; *see also* Tex. Att'y Gen. Op. No. GA-0104 (2003) at 4. For these reasons, we question whether a governmental entity could, in good faith, make either finding regarding an officer's legal expenses incurred in defending against the state's challenge to his or her right to hold office.

In sum, the College has discretion to reimburse a trustee for the expense of defending a quo warranto action only if it determines that the expenditure concerns a legitimate public interest of the College and not merely the trustee's personal interest and that the quo warranto action involves acts that were undertaken by the trustee in good faith within the scope of an official duty. Tex. Att'y Gen. Op. No. GA-0104 (2003) at 4. Any determination by the College to reimburse a trustee's expenses in the circumstances you describe would likely be subject to an abuse of discretion standard by a reviewing court. *See* Tex. Att'y Gen. Op. No. DM-450 (1997) at 9 (stating that a "decision by an institution of higher education will be set aside if it is arbitrary or unreasonable, or if it violates the law"). Thus, while it is for the College to make the initial determination, given the precedent involving election contests, a court is unlikely to conclude that the College has a public interest in paying the legal expenses associated with a challenge to a trustee's qualifications for office.[3]

---

[2]Briefing we received argues that there is a public interest in the integrity of the election process. *See* Brief from Keith A. Gross, Att'y at Law, to Honorable Ken Paxton, Tex. Att'y Gen. at 2 (May 14, 2015) (on file with Op. Comm.) ("Brief"). This is similar to the argument in Opinion JM-685 about the vote count accuracy that this office rejected as sufficient justification for the governmental entity to bear the legal expenses of one particular candidate over another. *See* Tex. Att'y Gen. Op. No. JM-685 (1987) at 4. It is also argued that because the voters of District II chose the trustee to be their voice at the College, the question whether the trustee remains in office is a matter of public concern. Brief at 2. Similar to the situation in Opinion DM-431, the College's interest in having a trustee from District II to represent the people of the district does not extend to having this particular individual represent the district. *See* Tex. Att'y Gen. Op. No. DM-431 (1997) at 2.

[3]We cannot conclude that there could never be circumstances under which it is appropriate for a governmental entity to reimburse an official for costs he or she incurred in the defense of a quo warranto proceeding. *Cf. Chandler v. Saenz*, 315 S.W.2d 87 (Tex. Civ. App.—San Antonio 1958, writ ref'd n.r.e.) (considering a challenge to municipality's incorporation and to authority of governing body and an injunction against payment of attorney's fees).

## S U M M A R Y

While it is unlikely that a court would conclude that the Houston Community College System has a public interest in paying the legal expenses associated with a challenge to a trustee's qualifications for office, the College must determine, in good faith and subject to review for abuse of discretion, whether the reimbursement is primarily for a College purpose and not merely for the trustee's personal interest and that the quo warranto proceeding involved actions of the trustee that were taken in good faith within the scope of his official duties.

Very truly yours,

CHARLES E. ROY
First Assistant Attorney General

BRANTLEY STARR
Deputy Attorney General for Legal Counsel

VIRGINIA K. HOELSCHER
Chair, Opinion Committee

CHARLOTTE M. HARPER
Assistant Attorney General, Opinion Committee